IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff-Respondent, | § | |
| | § | |
| V. | § | CRIMINAL ACTION NO. H-02-577-16 |
| | § | CIVIL ACTION NO. H-09-3710 |
| TINH THANH HOANG, | § | |
| | § | |
| Defendant-Movant | § | |

## MEMORANDUM AND RECOMMENDATION

Before the Magistrate Judge in this federal habeas corpus proceeding pursuant to 28 U.S.C. § 2255 is Movant Tinh Thanh Hoang's § 2255 Motion to Vacate, Set Aside or Correct Sentence (Document No.1571),[1] the United States' Answer and Motion to Dismiss as Time-Barred (Document Nos.1573 & 1574), and Movant's Response to the United States' Motion to Dismiss (Document No. 1583).  After reviewing Movant's § 2255 Motion, the Government's Answer and Motion to Dismiss, Movant's Response to the Government's Motion to Dismiss as Time-Barred, the record of the proceedings before the District Court in the underlying criminal case, and the applicable case law, the Magistrate Judge RECOMMENDS, for the reasons set forth below, that the Government's Motion to Dismiss as Time-Barred (Document No. 1574) be DENIED, and the Government be required to respond to the merits of Movant's claims.

---

[1] Tinh Thanh Hoang's Motion to Vacate, Set Aside or Correct Sentence can be found at Document No. 1 in Civil Action H-09-3710  and at Document No. 1571 in Criminal Action No. H-02-577.  References hereafter will be to the Criminal Document numbers unless otherwise indicated.

I.  **Procedural History**

Movant Tinh Thanh Hoang ("Hoang"), who is currently in the custody of the United States Bureau of Prisons, is seeking federal habeas corpus relief under 28 U.S.C.§ 2255. This is Hoang's first attempt at § 2255 relief.

On March 4, 2004, Hoang and others[2] were charged in a third superceding indictment with drug trafficking activities including conspiracy to possess with intent to distribute MDMA or ecstasy, methamphetamine, LSD, cocaine, ketamine and anabolic steroids (Count 1SSS); possession with intent to distribute 10 grams or more of LSD (Counts 2SSS-5SSS); possession with intent to distribute MDMA or ecstasy and aiding and abetting (Counts 6SSS-8SSS, 10SSS-12SSS, 14SSS, 18SSS, 21SSS, 29SSS-31SSS, 33SSS, 34SSS, 38SSS and 39SSS); unlawful use of a communication facility (Counts 9SSS, 13SSS, 15SSS-17SSS, 19SSS, 20SSS, 22SSS and 23SSS); investment of illicit drug profits (Count 25SSS); continuing criminal enterprise (Count 26SSS); money laundering conspiracy (Count 27SSS); possession of a tableting machine with the intent to manufacture a controlled substance (Count 28SSS); money laundering (Count 32SSS); possession of flunitrazepam (rohypnol) (Count 35SSS); possession of a firearm in furtherance of a drug trafficking crime (Count 36SSS) and felon in possession of a firearm in furtherance of a drug trafficking crime (Count 37SSS). Document No. 700). Of the 39 charged counts, Hoang was charged only in count one (conspiracy to possess with intent to distribute 3, 4

---

[2] Also named in the third superceding indictment were Sarabjeet "Rick" Singh, Amrik "Spiro" Singh, Amarjit Singh, Harmohind "Mickey" Grewal, Maneet "Jimmy" Singh, Estanislao Noe Carrasco, Dwight "Vinnie" Vincent, Christopher Rochester, Mandy Myrold, Stephanie Villarruel, Concepcion Martin Morales, Rafi Shotland, Gary James Fitzsimmons, John Hoang, William "Bill" Briggs, Ronnie Ginns, Amit Gottlieb, Tony Hutson, Alex Morelli a/k/a Wynne Hiraldo, Minda Harris, Steven Michael Sgitcovich, Entertainment 2000, Inc., and Entertainment 2001, Inc. Co-defendant, John Hoang, is Hoang's brother.

methylenediosymethamphetamine (MDMA or ecstacy) methamphetamine, 10 grams or more of lysergic acid diethylamide (LSD), cocaine, ketamine and anabolic steroids, in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(C), and (b)(1)(D)). Hoang and co-defendants Ronnie Ginns and John Hoang were tried by a jury. Following a nine day jury trial, Hoang was found guilty. (Document No. 938).

Prior to sentencing, a pre-sentence investigation report ("PSR") was prepared to which Hoang filed written objections.[3] (Document Nos. 1239, 1246, 1352). Pursuant to the PSR, Hoang's advisory guideline sentencing range was calculated as follows: (1) Hoang had a base offense level of 34 under U.S.S.G. § 2D1.1(c)(3).[4] (2) Because Hoang possessed firearms in

---

[3] Hoang objected to factual statements in the PSR. In particular, Hoang objected to paragraphs 25, 48, 49, 50, 51, 39, 75, 76, 78, 86, 99, and 108. Hoang objected to the quantity of drugs he was held accountable for, his role in the offense, and his sentence increase based on his possession of firearms. (Document No. 1246).

[4] With respect to Hoang's conduct and role assessment, the PSR ¶ 69 states:

[Hoang] is considered a manager/supervisor in the drug distribution cell run and operated by his brother, John Hoang. [Hoang] is responsible for the distribution of multi-thousand tablets of MDMA at the direction of John Hoang. The offense involved five or more participants. The case agent has described [Hoang] as John Hoang's "Lieutenant." [Hoang] carried out essential business tasks for his brother, sometimes acting as a go-between in dealings with Singh or Singh's associates and John Hoang's other distributors. Further [Hoang] provided assistance with product acquisition and distribution, as well as the handling of proceedings. [Hoang] appeared to have dealt almost exclusively with one of John Hoang's distributors, Phong Thanh Tran, exerting control over Tran's activities. During the course of, and in connection with his drug trafficking activities, [Hoang] possessed firearms within the meaning of the guidelines. On June 11, 2002, law enforcement seized 1,126.64 grams of MDMA belonging to the organization. [Hoang] was involved with this entire amount. However, John Hoang's post-arrest statements reflected [Hoang] was responsible for at least 60,000 MDMA tablets which is equivalent to 6,000 grams of MDMA, pursuant to U.S.S.G. § 2D1.1, comment. (n. 11) (by analogy one tablet of MDA is identical in potency to MDMA and is equivalent to 100 milligrams). As per the Drug Equivalency Table, 6,000 grams of

connection with the drug trafficking activities, his base offense level was increased two levels pursuant to U.S.S.G. § 2D1.1(b)(1). (3).  Because Hoang, who according to the case agent was John Hoang's "Lieutenant", was a manager/supervisor of a multi-thousand tablet MDMA organization that involved more than five participants, and responsible for the distribution of multi-thousand tablets of MDMA at the direction of John Hoang, pursuant to U.S.S.G. § 3B1.1(a), his offense level was increased three levels. (4).  With an adjusted offense level of 39, and with a criminal history category of I, Hoang had an advisory guideline sentence range 262 to 327 months.  However, the maximum term of imprisonment under 21 U.S.C.         § 841(b)(1)(C), was 240 months or 20 years, and as a result, Hoang's advisory guideline range was restricted to 240 months.  On October 14, 2005, Hoang was sentenced to a term of imprisonment of 240 months on Count 1sss, a 3 year term of supervised release, and a $100 special assessment. Judge Harmon granted the Government's Motion to Dismiss the original indictment.  (Document Nos.  1248, 1269).  Judgment was entered on October 26, 2005. (Document No.  1269).  With respect to Hoang's sentence, Judge Harmon stated:

> Appearing in court this morning is Tinh Thanh Hoang, who has been found guilty of conspiracy to possess with intent to distribute MDMA, LSD, cocaine, Ketamine, and anabolic steroids.  Mr. Hoang has one prior misdemeanor conviction in Harris County, Texas.
>
> He's the brother of John Hoang, one of the leaders of the conspiracy; and he held a managerial role in which he supervised more than five criminal participants.  The defendant also possessed firearms in connection with his drug trafficking activities.
>
> He's 29 years old, single, and has no children, is one of eight siblings in a family that fosters support for each other and a good work ethic.  He has maintained a stable work history and has demonstrated a potential to excel in his studies, but his poor judgment and involvement with his brother in illicit drug trafficking has led

---

MDMA is equivalent to 3,000 of marijuana.  (Document No.  1239, ¶ 69, p.  22).

him down the wrong path.

> Based on the amount of drugs attributable to the defendant and the statutory maximum, he is facing a sentence of 20 years. Additionally, he does not qualify for the safety valve provision and has failed to accept responsibility for his involvement by going to trial. I believe that a sentence of 20 years is just, as it reflects the seriousness of the offense, its promotes respect for the law, and affords adequate deterrence to criminal conduct.
>
> The Court has considered the guidelines and finds that a sentence within those guidelines is consistent with and takes into account the purposes of 18 United States Code, Section 3553A. (Transcript of Sentencing Hearing, Document No. 1337, pp. 19-20).

The Court overruled all of Hoang's factual objections to the PSR, which were based on Hoang's contention that he was not guilty of the crime charged. (Transcript of Sentencing Hearing, Document No. 1337). Judge Harmon also overruled Hoang's objections concerning his role in the offense in the following exchanges:

> The Court: All right. Well, let me just say this, I've been doing this for a long time, never had a situation in which DEA ever had a tape recorder. They never do. So, I mean, that's an argument that's many times made to the jury, a perfectly valid argument. But it doesn't mean that the statements that are written down by the DEA agents in their reports are not accurate statements or reliable statements just because they didn't have a tape recorder.
>
> So, I understand what your position is; but I don't believe that renders the reports that the probation officers relied upon not reliable. I mean, they— they're credible and reliable because they're written down by these people who were investigating the case. And I'm allowed to consider those, and the probation officer puts them down for my consideration.
>
> Mr. Wilner: But I think the problem is: In their reports and in the – in fact, all the reports puts Tinh Hoang instead of John Hoang for the transactions with Tran. I mean, those are reports– those are— the E1's, those are the reports that they went with and then continues investigation, mentioning Tinh Hoang where it should be John Hoang, according to how the trial came out.
>
> The Court: The trial in the other case?

5

The Defendant: That's correct.

The Court: In Judge Lake's court?

Mr. Wilner: That's correct. But it was also brought up again– but it's brought up in their report, which is incorrect. That's what I wanted to be certain of.

The Court: Well, I just don't understand how that could– how that makes any difference. I mean, you can say that; but I mean, Mr. Smith has already told us they didn't bring out anything about your client in the other case because Judge Lake had suppressed the evidence.

Mr. Wilner: But they're bringing it out here again, saying that he's the one that made the delivery and everything was– he was the main lieutenant for John Hoang. There never was any testimony to that. But if we go on further, they– they repeat basically his involvement in this particular case.

The Court: Based upon this report of the agents. And that's your complaint?

Mr. Wilner: And those reports were incorrect at the time they made it because the person that they had gotten the information from admitted under oath, after he lied under oath, that it was not him, it was his brother. Does that make any sense? In other words, he–

The Court: What do you mean "admit this under oath?" Here or in Judge Lake's court?

Mr. Wilner: He admitted when he – in Judge Lake's court and also in his – in his plea. And then, in trial he then changed his story after he pled, involving Tinh Hoang. Then at trial he made it John Hoang.

Mr. Smith: And in the trial before Judge Lake, there was — there was long, arduous attacks on the credibility of Tran by defense counsel. The jury heard it all. The jury heard him testify, be – get recalled to testify again; and they heard some differences in the story.

The jury chose to believe that John Hoang was involved in it. And I believe that if they'd heard the evidence on Tinh Hoang, they would have found that he was involved in it, too, just as this jury did in this case.

They heard a lot of the evidence about that criminal episode in this case, in this trial; and they found that Tinh Hoang was a conspirator. And whether– whether all of that stuff purports to what Mr. Wilner says it should, it doesn't matter

because it is – it is good, relevant, conduct that should be considered by this Court.

Mr. Wilner: We're saying the Government took a position to say it was John Hoang and not Tinh Hoang when they tried that case, and I don't think he should be involved in that case because he was not involved in that case.

The Court: All right. Well, I'm going to accept the analysis of Mr. Smith and the probation officer; and I'm going to overrule your objections to this— these objections that all revolve around the issue of Mr. Tinh Hoang's relationship with Mr. Tran. (Transcript of Sentencing Hearing, Document No. 1337, pp. 8-11).

In addition to the objections to the PSR based on Hoang's role in the offense, the record shows that counsel objected to the firearm enhancement (Document No. 1337, pp. 12-15), to Hoang's leadership role enhancement,(Document No. 1337, p. 16), and to the drug quantity he was held accountable for calculating his base offense level. (Document No. 1337, pp. 16-17).

Mr. Wilner: Well, there were no firearms – the firearms were suppressed in this court. They were suppressed in the other court. And he was not in possession of firearms except in the apartment, and that was suppressed.

Mr. Smith: Whether — whether it was suppressed or not, the two points that are added for the – for the firearm in the case, that – that has to do with the relevant conduct, is – is accurate. And the –the Fifth Circuit has – has -- has long held that if – if there's firearms involved in the case the two points should be added.

Mr. Wilner: I'm just stating he was never in possession of a firearm.

The Court: Well, he wasn't in possession of a firearm when he was arrested, right?

Mr. Wilner: That's correct.

The Court: But there was evidence there were firearms used during the course of this conspiracy.

Mr. Wilner: Not by him.

The Court: Well, but there were drugs in close proximity to the firearms, correct? Wasn't there evidence of that?

Mr. Wilner: That's correct.

The Court: And that was part of the conspiracy?

Mr. Wilner: That's correct.

The Court: All right. Well, then, I'm going to overrule your objection.

Mr. Wilner: Do you want to say something?

The Court: Anything else?

The Defendant: Your Honor, I didn't understand the question – the– the answer to that. You said there's drugs at the–

Mr. Wilner: Apartment.

The Defendant: So, I'm being charged – I was at work that day and, then, called me back to turn myself in. I wasn't anywhere–

The Court: You were found guilty in a conspiracy–

The Defendant: Okay. Yes, ma'am.

The Court: — a conspiracy, an agreement among many — several people, more than two people –or two or more people to commit a crime. That's what you were– that's what you were convicted of. The conspiracy was much larger than your being at work and coming in and turning yourself in.

The Defendant: Okay.

The Court: The conspiracy involved many incidents. It involved drugs; it involved a long period of time. And– and during the course of this conspiracy, weapons were found in close proximity with drugs. And– and I believe that you admitted that you owned the firearms that were in your closet.

The Defendant: To who, ma'am?

The Court: Well —

Mr. Wilner: No. That's correct, your Honor. The firearms in his closet that were suppressed were admitted to be his firearms.

The Court: Right. Okay. And the adjustment of two points is made not because you were convicted of a firearms offense. It was simply because there were

weapons in close proximity to drugs during the course of this conspiracy, and it — it was not clearly improbable that the weapons were connected with that offense.

The Defendant: Yeah.  Okay I have a question on that.  Under — I had a chance to read over PSI manual, and under 2D1–

The Court: Yeah.

The Defendant:  – it said on – I don't have it real clear in front of me, but it said if a defendant is arrested and the firearm is in his closet he shouldn't be charged with it.  So, that was my question under the PSI manual, 2D1.

The Court: All right.  I'm looking at 2D1.1, Commentary Note 3: Definitions of firearms and dangerous weapons are found in the commentary to Section 1B1.1, Application Instructions.  The enhancement for weapon possession reflects the increased danger of violence when drug traffickers possess weapons.  The adjustment– the adjustment should be applied if the weapon was present unless it is clearly improbable that the weapon was connected with the offense.  For example, the enhancement would not be applied if the defendant, arrested at his residence, had an unloaded hunting rifle in his closet.

That's what– that's what that says.

The Defendant: Yes, ma'am.

The Court: Okay.

The Defendant: So, that goes back — that's what I—

Mr. Wilner: I believe the – the weapon was unloaded, the one that was in the closet.

The Court: Well, I believe there was more than one weapon, was there not?

Mr. Smith: Yeah.  There were weapons in the car.  There were two weapons that were in a car owned by Mr Tran— or registered to Mr. Tran.  There was– there was lots of weapons in this case.

There was testimony, at least the relevant conduct, about the Planet Saigon and the 41 shots and Mr. Tran being there when the – when that gun skirmish took place.

The two-point adjustment is– is an adjustment that the probation officer has aptly

9

applied in this case and should stand.

The Court: I agree. I'm going to overrule your objection to that.

Any other objections that you want to point to– point out?

Mr. Wilner: Well, I think — I think the evidence that he was John Hoang's lieutenant–

The Court: Well, that goes back–

Mr. Wilner: – or distributor–

The Court: Well, that goes back to the reports that you say– isn't that part and parcel of this—

Mr. Wilner: That's correct.

The Court: Yeah.

Mr. Wilner: All right.

The Court: Anything else you want to talk about?

Mr. Wilner: That's all we have on that, your Honor.

The Court: All right.

The Defendant: The–

The Court: Sure. Go ahead.

The Defendant: I'm sorry, your Honor. The amount 60,000 pills, that's equivalent to $600,000 of US currency; and there's no tied in open court that I ever have that amount of money or receive a benefit of a large fruit like that. And that's in my PSI, to – to have access to $600,000. That's what I'm being charged. So, that's my question.

Never in court anything mention. I understand– in court, I see this box with evidence pertaining to other defendant, my co-defender, which those that receive that went home, time served, and not once they ever point and said, hey, it belong or have tied with me.

10

But I don't understand how, you know, 60,000 pills of Ecstasy was being tied to me or any tied of $600,000 of US currency that being tied to me, which that's part of the enhancement of my level on my PSR.

The Court: Well, we're talking here about a conspiracy again—

The Defendant: Yes.

The Court:  — you know.  And a conspiracy involves a lot of drugs, and you're being — you're being held accountable for the drugs.

The Defendant: Okay.

The Court: All right.  I'm overruling all the objections to the presentence report, adopting the presentence report as my own, both the findings of fact and the application of the guidelines to the facts.  I find a total offense level of 39, criminal history category of one, which gives a guideline provision of 240 months.

Anything else, Mr. Wilner, before I pronounce sentence?

Mr. Wilner: Just under 18, 355– 53, we feel the sentence under the PSR should not be more than necessary to achieve adequate punishment or a deterrent to his defendant.  And that– there's been a major disparity in the sentencing of similar defendants in this particular case.  Ones that were involved in— involved in the conspiracy with— with drugs, date rape, and that this particular defendant was driving a nine year old car.  There's no money.  There's no– there was no showing of any profits or any transactions, any surveillance with him.

And we feel that testimony convicted him were from defendants that he was locked up at one point in time for over a year period, where– they did not give their— their confessions to the DEA until we had several court appearances where they were all mixed together.  Then two of them actually identified him.  And in testimony even at trial Amrik Singh identified him.  Then, when he was cross-examined, he said, "No, I 've never met him."

The only two that were detrimental to my client were Chaves and Carrasco, and both of them received minimum sentences.  And they've got smuggling and a lot of – a lot more convictions prior to the sentencing here by this Court.

That's all I have, your Honor.

The Court: Mr. Smith?

11

>Mr. Smith: Your Honor, our Congress has provided that people can earn recommendations to the Court for downward departures by being of substantial assistance to the Government. And, therefore, when Congress did that, they anticipated that there would be some disparity in the sentences because some people earned it.
>
>And in this case each one of the ones that has a disparity in the sentence earned a motion for downward departure. The Court considered it and gave the sentence that they felt that was just based upon their being repentant, based upon acceptance of responsibility and other things.
>
>And in this case, what the probation office recommends to the Court is an adequate and fair and just sentence.
>
>Mr. Wilner: Your Honor?
>
>Mr. Wilner: I think my client wants to make a statement, also.
>
>The Court: Yes, I have going to ask Mr. Hoang if he wants to say something.
>
>The Defendant: I pray that your Honor would ensure me a fair and informative judgment . Thank you. (Transcript of Sentencing Hearing, Document No. 1337, pp. 12-19).

Hoang and two co-defendants (John Hoang and Ronnie Ginns) appealed their convictions to the Fifth Circuit Court of Appeals. (Document No. 1251). On appeal, Hoang argued (1) that the district court should have conducted a *Daubert* hearing to determine whether the methods used by Government chemists to test for controlled substances were scientifically reliable; (2) that the court erroneously gave a *Pinkerton* charge that allowed the jury to find him guilty of substantive offenses alleged in numerous counts against co-defendants even though they were charged only in a single count of conspiracy; (3) that the court improperly refused the requested instruction concerning a common objective and the degree of criminal intent necessary for a guilty verdict; (4) that his Sixth Amendment right to confrontation was violated because the PSR used statements from codefendant John Hoang to apply a role enhancement and to determine the

12

applicable drug quantity; (5) the court erred by enhancing his sentencing based on two firearms that had been suppressed; (6) that the court erred by enhancing his base offense level for being a manger or supervisor under U.S.S.G. § 3B1.1(b); and (7) that his sentence was unreasonable when compared to the sentences of other codefendants.  The Fifth Circuit, unpersuaded by all the arguments raised, on July 14, 2008, affirmed the convictions.  (Document Nos. 1506, 1507). With respect to the arguments raised by Hoang, the Fifth Circuit wrote in pertinent part:

> John Hoang, Tinh Thanh Hoang, and Ronnie Ginns were convicted of conspiracy to possess with intent to distribute a controlled substance as a result of their involvement in a large drug trafficking organization in Houston, Texas.  The indictment charged that the conspiracy involved 3, 4 methylenedioxymethamphetamine (also known as MDMA or Ecstasy); methamphetamine; lysergic acid diethylamide (LSD); cocaine; ketamine; and anabolic steroids.  The district court sentenced John and Tinh Hoang each to 240 months in prison, and it sentenced Ginns to 188 months.  The defendants now appeal, raising numerous issues.  We AFFIRM the convictions and the sentences.
>
> All three defendants argue that the district court should have conducted a hearing pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed. 2d 469 (1993), to determine whether the methods used by Government chemists to test for controlled substances were scientifically reliable. The argument is based on the notion that a small number of pills containing MDMA taken from a much larger group of pills and ground up for testing could yield a positive result even if not all of the pills in the larger, untested group contain the drug.
>
> The district court is required by *Daubert* to make "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Id.* at 592-93, 113 S.Ct. at 2796.  The purpose of the assessment is to ensure reliability, and the inquiry is flexible. *United States v. Hicks*, 389 F.3d 514, 525 (5th Cir. 2004).  The court has wide latitude in making its determination. *Id.*  No separate hearing is necessary.
>
> Here, the experts explained that the Government exhibits were subjected to visual inspection to be sure the pills were all the same.  The chemists then obtained random samples from the exhibits and subjected them to color and gas chromatography mass spectrometry testing to determine the presence of controlled

13

substances.  "Random sampling is generally accepted as a method of identifying the entire substance whose quantity has been measured."  *United States v. Fitzgerald*, 89 f.3d 218, 223 n. 5 (5th Cir.  1996) (rejecting argument that evidence failed to prove possession of over five grams of cocaine base because chemist tested only five of 63 "rocks").

All defendants also challenge the district court's jury charge.  They all contend that the district court erroneously gave a *Pinkerton* charge that allowed the jury to find them guilty of substantive offenses alleged in numerous counts against codefendants even though they were charged only in a single count of conspiracy.  We see no prejudice or reversible error.  The district court correctly charged the jury on the requirements for finding the defendants guilty of conspiracy.  It instructed the jury to consider each defendant and the evidence separately and to acquit if it did not find the elements of a conspiracy.  The portion of the charge concerning a substantive offense was expressly conditioned on the jury *first* finding beyond a reasonable doubt that the defendants were guilty of the conspiracy charged in count one.  Furthermore, the verdict form did not ask the jury to determine guilt or innocence of any substantive counts.  Although the *Pinkerton* instruction should have been omitted, we are not left with substantial and ineradicable doubt that the jury was improperly guided in its deliberations.  *See United States v. Lucas*, 516 F.3d 316, 324 (5th Cir.  2008).

John Hoang challenges the district court's reference in the charge on conspiracy to "a kind of partnership in crime" and a "scheme."  Tinh Hoang and Ginns similarly argue that the district court improperly refused requested instructions concerning a common objective and the degree of criminal intent necessary for a guilty verdict.  We have carefully reviewed the charge and note that it is virtually identical to the Fifth Circuit Pattern Jury Instructions.  A district court does not err by giving a charge that tracks this circuit's pattern instructions and is a correct statement of the law.  *United States v. Turner*, 960 F.2d 461, 464 (5th Cir.  1992).  We find no abuse of discretion in the district court's charge or in its refusal of the requested instructions.  *See United States v. Skelton*, 514 F.3d 433, 446 (5th Cir.  2008).

Tinh Hoang argues that his Sixth Amendment right to confrontation was violated because the presentence report (PSR) used statements from codefendant John Hoang to apply a role enhancement and to determine the applicable drug quantity.  He correctly concedes, however, that we have consistently held, even after *United States v.  Booker*, 543 U.S. 220, 125 S.Ct.  738, 160 L.Ed.  2d 621 (2005), that the Sixth Amendment is not violated by the use of hearsay at sentencing.  *See United States v.  Mitchell*, 484 F.3d 762, 776 (5th Cir.), *cert.  denied* —U.S.—, 128 S.Ct.  297, 169 L.Ed.  2d 212 (2007); *United States v.  Beydoun*, 469 F.3d 102, 108 (5th Cir.  2006).

Tinh next argues that the district court erroneously enhanced his offense level based on two firearms that had been suppressed, and he urges us to follow a Sixth Circuit case to find reversible error. We have previously held, however, that the exclusionary rule does not apply to the district court's consideration of evidence at sentencing. *See United States v. Montoya-Ortiz*, 7 F.3d 1171, 1181 (5th Cir. 1993). We are bound by our precedent. *See United States v. Rodriguez-Jaimes*, 481 F.3d 283, 288 (5th Cir. 2007).

Tinh further argues that the district court erroneously enhanced his base offense level for being a manager or supervisor under U.S.S.G. § 3B1.1(b). We review the district court's determination for clear error. *United States v. Rose*, 449 F.3d 627, 635 (5th Cir. 2006). The role enhancement applies if the defendant was "the organizer, leader, manager, or supervisor of one or more other participants." §3B1.1, comment. (n.2).

Tinh argues that he was nothing more than an "errand boy" for the his brother John. The record shows, however, that John described Tinh as his "main conduit" for distributing MDMA. Tinh leased the apartment from which the brothers distributed drugs and from which Billy Tran obtained the MDMA that he sold to a cooperating source on June 11, 2002. The PSR shows that Tran told federal agents that he dealt MDMA for Tinh, from whom he obtained his supply. Tinh argues that Tran's statements are unreliable because Tran later said that he was working for John Hoang. The district court essentially made a credibility determination in choosing to believe Tran's statement to the agents about Tinh. *See United States v. Shipley*, 963 F.2d 56, 59 (5th Cir. 1992) (holding role enhancement was not clearly erroneous where district court made credibility decision to believe co-defendants' statements). Furthermore, it is certainly plausible that Tran was dealing MDMA at the direction of both John *and* Tinh. For example, there was testimony from Christopher Brown, one of the other drug traffickers in the organization, that co-conspirator Rick Singh said Tinh and John could "move large quantities of pills for us." Brown delivered pills to Tinh for distribution after John made the arrangements. In light of the record as a whole, we conclude that the district court's determination that Tinh was a manager or supervisor was not clearly erroneous.

John and Tinh both make similar arguments challenging the reasonableness of their sentences. They both contend that the 240-months imposed on them was disproportionate to the sentences of other, allegedly more culpable, members of the conspiracy. Because both John's and Tinh's advisory guideline range was higher than the statutory maximum, the statutory maximum became the guideline sentence. The record shows that the district court heard the defendants' arguments, committed no procedural error in its sentencing, and carefully considered the 18 U.S.C. § 3553(a) factors with respect to each defendant before

>determining that the statutory maximum was appropriate in each instance. With respect to other members of the conspiracy, many of whom pleaded guilty and cooperated with the Government, the district court noted when sentencing John that the circumstances of their agreements were not before it and observed that it had to consider the evidence in this particular case. We cannot say that the district court's determination of the sentence was unreasonable. *See Gall v. United States*, ___U.S.___, 128 S.Ct. S.Ct. 586, 597-98, 169 L.Ed. 2d 445 (2007); *United States v. Cisneros-Gutierrez*, 517 F.3d 751, 766-67 (5th Cir. 2008) (Document No. ___, 285 Fed. App. 133, 136-138, 2008 WL 2725301 (5th Cir. 2008) (emphasis in original).

Hoang filed a petition for writ of certiorari with the United States Supreme Court, which was denied on November 10, 2008. *Hoang v. United States*, 129 S.Ct. 588 (2008). As such, Hoang's judgment and conviction became final on November 10, 2008.

The docket sheet reveals that Hoang's § 2255 motion was received and filed on November 12, 2009. (Document No. 1571). Hoang's certificate of mailing states he placed his § 2255 motion in the prison mail system on November 10, 2009. In his § 2255 motion, Hoang raises several claims of ineffective assistance of counsel. Hoang, through ground one, argues that counsel was ineffective for failing to adequately pursue the enhancement for leadership role. Ground two alleges that counsel was ineffective for failing to adequately pursue objections to the firearm enhancement. Ground three alleges that counsel was ineffective for failing to obtain *Brady* material. Finally, Hoang alleges that counsel was "generally ineffective resulting in a denial of due process." According to Hoang, "counsel failed to address the inconsistent statements of codefendant Phong Tran; the disparity in sentencing; failing to pursue the questions the jury presented prior to rendering a verdict; drug weights added in Petitioner's drug weight calculation which were confiscated from others after Petitioner's arrest. Counsel's general lackadaisical performance may have been the result of Petitioner's trouble in paying him." (Document No.

1571, p. 6). The Government has answered and has moved to dismiss the instant action as time-barred. (Document Nos1573, 1574). According to the Government, Hoang's §2255 should be dismissed because it is time-barred. The Government acknowledges that the Clerk received Hoang's § 2255 motion on November 12, 2009, but that it is "deemed filed as of November 10, 2009." (Document No. 1573, 1574, p. 2). With respect to the November 10, 2009, filing date, the Government wrote:

> Hoang certified that his § 2255 Motion was deposited into the prison's mail system on November 10, 2009, and is deemed filed as of that date. *Houston v. Lack*, 487 U.S. 266, 276 (1988) (a document is deemed filed by a pro se prisoner when it is delivered to prison authorities for mailing, postage pre-paid.). *See also United States v. Young*, 966 F.2d 164, 165 (5th Cir. 1992) (providing benefit of *Houston v. Lack* to pro se prisoner in § 2255 proceedings); Rule 3(d), *Rules Governing Section 2255 Proceedings For the United States District Courts* (§ 2255 motion is deemed timely if inmate deposits it in the institution's internal mailing system on or before the last day of filing).

This § 2255 proceeding is ripe for ruling.

**II. Discussion**

**A. Hoang's § 2255 motion is not time-barred**

The United States argues that Hoang's § 2255 Motion to Vacate, Set Aside or Correct Sentence should be dismissed because it is time-barred. On April 24, 1996, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") was enacted. With the enactment of AEDPA, 28 U.S.C. § 2255 now specifically provides for a one-year statute of limitations:

> A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of–
>
> (1)     the date on which the judgment of conviction becomes final;

17

(2)     the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from filing by such governmental action;

(3)     the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4)     the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255.

Here, Hoang's conviction became final for purposes of § 2255(1) on November 10, 2008, when the United States Supreme Court denied his petition for writ of certiorari. *See Hoang v. United States,* ___U.S.___, 129 S.Ct. 588 (Nov. 10, 2008); *Griffith v. Kentucky*, 479 U.S. 314, 321 n. 6 (1987) ("By 'final,' we mean a case in which a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied."). The one-year limitation period began to run on November 10, 2008, the day his conviction became final, and expired one year later on November 10, 2009. Even though Hoang's § 2255 motion was filed on November 12, 2009, his Certificate of Service states he placed his § 2255 motion in legal mail on November 10, 2009. As such, Hoang's § 2255 motion was filed on November 10, 2009, *See Houston v. Lack*, 487 U.S. 266, 276 (1988), and is therefore timely, and not subject to dismissal as urged by the Government. In its motion, the Government argues that Hoang's motion was untimely because Hoang's judgment became final 90 days after the Fifth Circuit affirmed his conviction, on or about October 13, 2008, and that Hoang had until October 13, 2009, to file a § 2255 motion. This argument overlooks the fact that

Hoang filed a petition for certiorari, which was denied on November 10, 2008. Upon this record, Hoang's § 2255 motion was timely filed and is not subject to dismissal as time-barred.

### III. Conclusion and Recommendation

Based on the foregoing, and the conclusion that Hoang's § 2255 motion was timely filed, it is

RECOMMENDED that the Government's Motion to Dismiss as Time-Barred (Document No. 1574) be DENIED. It is FURTHER RECOMMENDED that the Government be required to respond to the merits of Hoang's § 2255 motion.

The Clerk shall file this instrument and provide a copy to all counsel and unrepresented parties of record. Within 14 days after being served with a copy, any party may file written objections pursuant to 28 U.S.C. § 636(b)(1)(C), Fed.R.Civ.P. 72(b), and General Order 80-5, S.D. Texas. Failure to file objections within such period shall bar an aggrieved party from attacking factual findings on appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Ware v. King*, 694 F.2d 89 (5th Cir. 1982), *cert. denied*, 461 U.S. 930 (1983); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982) (en banc). Moreover, absent plain error, failure to file objections within the ten day period bars an aggrieved party from attacking conclusions of law on appeal. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1429 (5th Cir. 1996). The original of any written objections shall be filed with the United States District Clerk, P.O. Box 61010, Houston, Texas 77208.

Signed at Houston, Texas, this 25th day of March, 2010.

Frances H. Stacy
United States Magistrate Judge